# 1:21-cv-10038-LAK

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re DITECH HOLDING CORPORATION, *et al.*

FINANCE OF AMERICA REVERSE LLC, Appellant,

v.

MORTGAGE WINDDOWN LLC, AS PLAN ADMINISTRATOR, Appellee.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (GARRITY JR., J.)

IN RE DITECH HOLDING CORPORATION, *ET AL.,* CASE NO. 19-10412 (JOINTLY ADMINISTERED)

================================================================

**REPLY BRIEF OF APPELLANT**
**FINANCE OF AMERICA REVERSE LLC**

Peter S. Partee, Sr.
Robert A. Rich
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
ppartee@huntonak.com
rrich2@huntonak.com

*Counsel for Appellant Finance of America Reverse LLC*

Dated: March 3, 2022

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

    I.      FoA's Claims Based On RMS' Post-Petition Subservicing Errors Arose Post-Petition………..……………………………………………………….. 2

    II.     The Post-Petition Extension Agreements Are Contracts Entered Into By RMS as Debtor-In-Possession, Breach of Which Gives Rise to Administrative Expense Liability…………………………...5

    III.    The Alternative Arguments Should Be Decided in FoA's Favor. ........................ 6

            A.  FoA's Claims Satisfy the "Benefit to the Estate" Test………………………. 7

            B.  Entry Into the Post-Petition Extension Agreements Represents an Ordinary Course Transaction Under Section 363(c) of the Bankruptcy Code…………………………………….9

CONCLUSION................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Crystal Apparel, Inc.*,
  220 B.R. 816 (Bankr. S.D.N.Y. 1998) .......................................................................................8

*Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*,
  829 F.3d 135 (2d Cir. 2016) .....................................................................................................3

*In re Enron Corp.*,
  279 B.R. 79 (Bankr. S.D.N.Y. 2002) ........................................................................................8

*In re Gamboa,* Case No. 04-00216, 2008 WL 8642621 (Bankr. D. Alaska Aug. 8,
  2008) .....................................................................................................................................3, 4

*In re Glob. Env't Servs. Grp., LLC*, Case No. 04-00748, 2006 WL 980582 (Bankr.
  D. Haw. Mar. 16, 2006) ............................................................................................................6

*Johns-Manville Corp.*,
  552 B.R. 221 (Bankr. S.D.N.Y. 2016) ......................................................................................3

*Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.)*,
  78 F.3d 18 (2d Cir. 1996) .........................................................................................................7

*In re Patient Educ. Media, Inc.*,
  221 B.R. 97 (Bankr. S.D.N.Y. 1998) ........................................................................................8

*Rescap Liquidating Tr. v. PHH Mortg. Corp. (In re Residential Cap., LLC)*,
  558 B.R. 77 (S.D.N.Y. 2016) ....................................................................................................4

*SNTL Corp. v. Ctr. Ins. Co.*, 571 F.3d 826 (9th Cir. 2009) ............................................................3

*Texaco Inc. v. Bd. Of Commissioners for the LaFourche Basin Levee Dist. (In re
  Texaco Inc.)*,
  254 B.R. 536 (Bankr. S.D.N.Y. 2000) ......................................................................................3

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89 (2d Cir.
  2007) .........................................................................................................................................6

**Statutes**

11 U.S.C. § 363(c) ...........................................................................................................................9

## **INTRODUCTION**

FoA's claims resulting from RMS' post-petition breach of its contractual subservicing duties arise post-petition, at the time of breach. The Plan Administrator has abandoned the contention that *all* claims for breach of an unassumed pre-petition contract are deemed to arise pre-petition. However it now defends the Bankruptcy Court's decision based on a flawed interpretation of the "fair contemplation" test which, if adopted, would bring about the same result.

The Plan Administrator contends that any claim for breach of an unassumed pre-petition contract is a contingent pre-petition claim so long as the parties "fairly contemplated" at the time of contracting that such a breach could happen. All contract parties can fairly contemplate the possibility of future breach, and so employing a test as formulated by the Plan Administrator would serve no purpose. A proper formulation of the fair contemplation test as used by courts within the Second Circuit asks whether pre-petition conduct occurred which, in the fair contemplation of the parties, did or likely would result in post-petition liability. FoA asserts no administrative priority claims for liability resulting from RMS' pre-petition conduct. The FoA Administrative Claim asserts claims exclusively arising as a result of RMS' post-petition subservicing errors, and those claims are entitled to administrative priority as post-petition claims under any test.

In any event, the vast majority of FoA's claims arise under subservicing extension agreements entered post-petition, and therefore would remain post-petition claims entitled to priority even under the Bankruptcy Court's flawed reasoning that they arise at the time of contract formation. The Plan Administrator does not even dispute that the subservicing extension agreements constitute contracts formed post-petition under applicable state law. Instead, the Plan Administrator simply questions whether applicable state law governs the issue. It does.

Finally, implicitly recognizing the flaws in the Bankruptcy Court's decision, the Plan Administrator devotes substantial portions of its brief to an alternative argument, not reached by the Bankruptcy Court, that RMS' estate received no benefit from the Subservicing Agreements given the extent of FoA's breach claims. That argument fails because any "benefit to the estate" requirement is viewed not in hindsight but at the time the debtor-in-possession accepts post-petition obligations. RMS' primary business was servicing reverse mortgage loans. Entering into arm's-length subservicing arrangements clearly served as a benefit for that business.

## ARGUMENT

### I. FoA's Claims Based On RMS' Post-Petition Subservicing Errors Arose Post-Petition.

The Bankruptcy Court adopted the Plan Administrator's mistaken contention that because FoA's post-petition breach claims are based on pre-petition contracts, the Subservicing Agreements,[1] they must be deemed to arise pre-petition. [A-22-23]. FoA asserts claims for damages resulting from RMS' *post-petition* subservicing errors and other material breaches of the Subservicing Agreements. [A-8, A-715]. The Bankruptcy Code defines "claim" to mean a "right to payment," including without limitation a right to payment that is contingent as of the bankruptcy filing. 11 U.S.C. § 101(5); FoA Opening Brief [D.I. 7] ("Op. Br.") at p. 18 (citing cases).[2] FoA's right to payment for damages resulting from those post-petition servicing errors could not have arose pre-petition, because RMS had not yet committed the post-petition servicing errors that give rise to FoA's right to payment.

---

[1] As explained below, the majority of the Subservicing Agreements at issue are not pre-petition contracts, but rather contracts formed post-petition, which serves as another basis to reverse the Bankruptcy Court's decision.

[2] Terms herein with an initial capital not required by standard capitalization rules, but not parenthetically or otherwise defined herein, shall have the meanings ascribed to them in FoA's opening brief.

2

A proper application of the "fair contemplation" test does not change the result. *See* Plan Administrator's Response Brief [D.I. 9] ("Appellee's Br.") at 13-18. The fair contemplation test asks whether the parties' relationship "has resulted in ***prepetition conduct*** that could, in the fair contemplation of the parties, give rise to liability" even if that liability is incurred post-petition. *In re Johns-Manville Corp.,* 552 B.R. 221, 233 (Bankr. S.D.N.Y. 2016) (emphasis added); *see also Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016) (holding that if a claim is contingent on future events, the claim must "result from pre-petition conduct fairly giving rise to that contingent claim" if it is to be deemed to arise pre-petition) (citation omitted); *SNTL Corp. v. Ctr. Ins. Co.*, 571 F.3d 826, 839 (9th Cir. 2009) ("Under [the fair contemplation] test, a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under non-bankruptcy law.").

The FoA Administrative Claim asserts claims for damages that not only were incurred post-petition, but that are based exclusively on RMS' post-petition performance in subservicing FoA's reverse mortgage loan portfolio. The FoA Administrative Claim is in no way related to RMS' pre-petition performance, and so the parties could not have "fairly contemplated" the existence of the FoA Administrative Claim pre-petition. *See Texaco Inc. v. Bd. of Commissioners for the LaFourche Basin Levee Dist. (In re Texaco Inc.)*, 254 B.R. 536, 559 (Bankr. S.D.N.Y. 2000) (finding that it would be "utterly unrealistic" to say that a dispute as to the debtor's post-confirmation compliance with "prudent operator" obligations, which no one claimed were supposed to have been performed prior to confirmation, are "claims" which arose prior to confirmation as defined under section 101(5) of the Bankruptcy Code);[3] s*ee also In re Gamboa,*

---

[3] The Plan Administrator attempts to distinguish *Texaco* on the basis that the case addressed whether a claim arose before or after plan confirmation, rather than before or after the petition date. Appellee's Br. at 18. However the analysis for determining when a claim arises is the same in both contexts. Nor is there any merit to the Plan Administrator's contention that subsequent Second Circuit case law effectively overrules *Texaco*, for the reasons already explained in FoA's opening brief. *See* Op. Br. at 19-20.

3

Case No. 04-00216, 2008 WL 8642621, at *3 (Bankr. D. Alaska Aug. 8, 2008) ("Under the fair contemplation test, I find that Office Tech's claim arose post-petition. Office Tech had no basis for seeking to enforce the non-compete agreement when [the debtor's] petition was filed. At that point in time, [the debtor] hadn't yet breached the non-compete agreement.").

The Bankruptcy Court erred in relying on the remedy provisions contained in the Subservicing Agreements as purported evidence that FoA's post-petition damages claims were fairly contemplated by the parties. *See* [A-24] ("The Subservicing Agreements contemplate the possibility of servicing errors and establish procedures for dealing with errors, including through indemnity provisions."). Most contracts provide remedies for dealing with breaches that might occur over the course of the contractual relationship. But the fair contemplation test does not ask whether the parties fairly contemplated that a breach *could* occur in the future. Rather it asks whether the parties fairly contemplated that a breach *did* or *would* occur, as a result of conduct that already transpired. *See Gamboa,* 2008 WL 8642621, at *3 ("Although the non-compete agreement gave Office Tech remedies for [the debtor's] breach, there was no pre-petition conduct on [the debtor's] part to indicate that a breach of this agreement had, or would, occur.").

The Plan Administrator's reliance on *Rescap Liquidating Tr. v. PHH Mortg. Corp. (In re Residential Cap., LLC)* 558 B.R. 77, 79 (S.D.N.Y. 2016) ("<u>ResCap</u>"), is misplaced for the same reasons already explained in FoA's opening brief. *See* Op. Br. at 20. In *ResCap*, the claimant sought post-petition attorneys' fees accrued in connection with a prepetition agreement for the sale of mortgage loans to the debtor. 558 B.R. at 79. All of the conduct giving rise to the claim for attorneys' fees occurred pre-petition. There was no "ongoing attempt to do business" post-petition, and so there was no post-petition performance that could give rise to an administrative claim. *Id*. at 86, n.7. In the case of the Subservicing Agreements, it is undisputed that they are executory

4

contracts under which both parties continued to do business post-petition, and under which FoA could and did accrue claims based on RMS' post-petition performance.

The Plan Administrator makes no attempt to explain the long line of cases which hold that a debtor who continues to accept the benefits of a pre-petition executory contract, as RMS did with respect to the Prepetition Subservicing Agreements, is deemed to have accepted the burdens of that contract as administrative expenses of the estate. *See* Op. Br. at 15 (citing cases). Instead, the Plan Administrator attempts to analogize the facts here with cases involving attorneys' fees or other indemnifiable losses incurred by a creditor post-petition, but which result solely from the debtor's pre-petition conduct. *See* Appellee's Br. at 14-15; Op. Br. at 19-21. The FoA Administrative Claim asserts no post-petition attorney fees or indemnifiable losses that result from RMS' pre-petition subservicing errors. Rather, it asserts claims for losses incurred exclusively as a result of RMS' post-petition servicing errors. Such claims arise post-petition.

## II. The Post-Petition Extension Agreements Are Contracts Entered Into By RMS as Debtor-In-Possession, Breach of Which Gives Rise to Administrative Expense Liability.

The Bankruptcy Court in its Memorandum Decision fully recognized that contracts entered into by RMS as debtor-in-possession, i.e. post-petition, give rise to administrative expense liability for any damages claims asserted under those contracts:

> Agreements entered into by the debtor-in-possession and supported by consideration beneficial to the debtor-in-possession, are actual and necessary to preserve the estate, and therefore a claim for damages arising from a debtor-in-possession's breach of a post-petition agreement gives rise to an administrative expense claim for the full amount of the damages provided for in the contract.

[A-10]. The Bankruptcy Court also recognizes that RMS entered into the Post-Petition Extension Agreements post-petition [A-5], but determined that those agreements nevertheless are not post-petition agreements because they are "modifications" under New York law. [A-19-20].

5

As explained in FoA's opening brief, the Bankruptcy Court's reasoning is flawed because even a "modification" constitutes a fully enforceable contract under New York law. Therefore the Post-Petition Extension Agreements, even if considered "modifications" rather than superseding agreements, are agreements entered into by RMS as debtor-in-possession. *See* Op. Br. at 25-26. The Plan Administrator cannot, and does not, challenge the conclusion that the Post-Petition Extension Agreements are new, independent contracts under New York law, entered into by RMS as debtor-in-possession. Appellee Br. at 23-26. Instead, the Plan Administrator pivots to an argument that "bankruptcy law," rather than New York law, determines whether such a contract constitutes a pre-petition agreement as opposed to a post-petition agreement. *Id.* at 23.

The time at which a binding contract is formed is determined by applicable non-bankruptcy law. *See In re Glob. Env't Servs. Grp., LLC*, Case No. 04-00748, 2006 WL 980582, at *4 (Bankr. D. Haw. Mar. 16, 2006) ("[N]onbankruptcy law defines the rights and duties of the parties to a particular contract."); *see also Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) (applying New York law to determination of whether a binding contract was formed). The Plan Administrator does not, and cannot, cite any authority to the contrary, nor does it explain why or how application of bankruptcy law would dictate a different result.

Accordingly, FoA's claims under the Post-Petition Extension Agreements constitute post-petition agreements, breach of which gave rise to administrative expense liability as asserted in the FoA Administrative Claim.

### III. The Alternative Arguments Should Be Decided in FoA's Favor.

The Plan Administrator argues that, to the extent they remain relevant, the Alternative Arguments should be remanded to the Bankruptcy Court or alternatively decided in the Plan Administrator's favor. Appellee's Br. at 26-31. FoA did not have an opportunity to brief the

6

Alternative Arguments issues below. However because they were briefed by the Plan Administrator, FoA respectfully submits that the Court can and should exercise its discretion to decide these issues in FoA's favor.

### A. FoA's Claims Satisfy the "Benefit to the Estate" Test.

Unable to seriously defend the Bankruptcy Court's determination that claims based on RMS' *post-petition* subservicing failures arose *pre-petition*, the Plan Administrator argues that FoA's claims fail the so-called "benefit to the estate" test. [A-18-21, A-29-31]. The Plan Administrator suggests that FoA's asserted claims of $14 million should be capped at no more than the dollar amount of subservicing fees RMS received from FoA (approximately $4 million according to the Plan Administrator), because that is the maximum amount the estate could have benefitted. Appellee's Br. at 29.

The flaw in the Plan Administrator's argument is that whether a transaction benefits the estate, such that any resulting claims are entitled to administrative expense priority, is determined at the time the estate incurs the obligation giving rise to the claim, not in hindsight. *See* Op. Br. at 33 (citing *Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.)*, 78 F.3d 18, 26 (2d Cir. 1996) ("*Klein*") (if that were not the case, "any post-bankrutpcy contract, entered into for the benefit of a bankruptcy's estate, would cease to be entitled to priorty the moment the deal turned sour.")). The Plan Administrator is correct that, unlike here, *Klein* involved an assumed contract which was rejected by a subsequently appointed trustee. *See* Appellee Br. at 30. However, consistent with the notion that the benefit to the estate test cannot be determined in hindsight, the Second Circuit held that the bankruptcy court's prior authorization for the debtor to assume the lease at issue constituted a determination that the contract benefitted the estate *at the time the debtor determined to assume the lease*. *Klein*, 78 F.3d at 26. That determination would not be

7

revisited even after the passage of time revealed that the lease was in fact not profitable for the debtor.  *Id.*.  Unlike in *Klein*, the Bankruptcy Court has not yet ruled whether RMS' entry into the Post-Petition Extension Agreements, and/or RMS' decision to continue performing under the Prepetition Subservicing Agreements, benefitted RMS' estate at the time those decisions were made.  However RMS' decision to continue subservicing on the terms set forth in those agreements is automatically deemed to benefit the estate to the extent made in the ordinary course of RMS' business, *see* Op. Br. at 33 (citing *In re Crystal Apparel, Inc.*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998) ("Transactions in the ordinary course of business of the debtor in possession create expenses of administration.")), and even non-ordinary transactions entered into by a RMS enjoy a strong presumption that they benefit the estate.  *See* Op. Br. at 34 (citing cases).

The Plan Administrator relies on *In re Enron Corp.*, where the Court applied the "benefit to the estate" test in determining that the claimant only was entitled to administrative priority for the two post-petition days the debtor actually used the pipeline capacity afforded under the relevant pre-petition energy contract.  279 B.R. 79, 86 (Bankr. S.D.N.Y. 2002).  Such reliance is misplaced because, unlike in *Enron*, RMS actually used the rights afforded to it under the Subservicing Agreements for the duration of those contracts.  RMS affirmatively chose to continue subservicing so as to earn subservicing fees. In doing so, this case is more analogous to *In re Patient Educ. Media, Inc*., where the Court found that the debtor's actual use of a sound stage benefitted the estate, even though use of the sound stage ultimately turned out to be unprofitable.  221 B.R. 97, 103 (Bankr. S.D.N.Y. 1998) ("[T]he debtor in possession must pay for the use of a nondebtor's property, even where the use turns out to be unprofitable.").

Finally, there is no merit to the Plan Administrator's contention that FoA already received "legally sufficient" compensation for the full amount of its claim, as a result of having received

8

"hundreds of millions of dollars in mortgage payments" on account of the underlying reverse mortgage loan payments. Appellee Br. at 18-21.[4] FoA is entitled to the benefit of its bargain under the Subservicing Agreements, which includes having RMS properly subservice FoA's reverse mortgage loan portfolio. RMS' duties are not satisfied merely by forwarding mortgage payments remitted by the underlying borrowers. *See* [A-1209-10] (listing extensive subservicer duties under the Subservicing Agreements). FoA would not have incurred over $14 million in post-petition damages had RMS fulfilled those duties. Nor should RMS somehow be entitled to credit for the dollar amounts remitted by reverse mortgage borrowers contained in FoA's loan portfolio.

### B. Entry Into the Post-Petition Extension Agreements Represents an Ordinary Course Transaction Under Section 363(c) of the Bankruptcy Code.

RMS' primary business consisted of servicing and subservicing reverse mortgage loans, just as contemplated by the Post-Petition Extension Agreements. Entry into those agreements constitutes an "ordinary course" transaction under section 363(c) of the Bankruptcy Code. *See* Op. Br. at 30. In fact, the Bankruptcy Court already has ruled through the 363(c) Order that engaging in subservicing activities post-petition constitutes an ordinary course transaction by RMS as debtor-in-possession, which requires no further court approval. *See* Op. Br. at 29-30.

The Plan Administrator mistakenly contends that the 363(c) Order applies only to RMS' continuation of existing pre-petition subservicing obligations, and not obligations incurred post-petition. Appellee's Br. at 28-29. The servicing activities determined to be ordinary course transactions by the 363(c) Order, are substantially the same as the duties set forth in the Subservicing Agreements. *See* Op. Br. at 29 n.33; 363(c) Motion ¶¶ 71, 81 [A-1318, A-1324].

---

[4] Although the Plan Administrator organizes this part of the argument in Section I.C. of its response brief, it is another formulation of the "cap argument" not reached by the Bankruptcy Court. [A-26, n.23] (declining to reach the issue of whether "[FoA's] claims would be limited to the reasonable value conferred upon the estates.").

Accordingly, even if the 363(c) Order does not expressly authorize RMS to incur new obligations, it implicitly recognizes that doing so is in the ordinary course for which no such authority is required.

Further, the record on appeal and the Bankruptcy Court docket belies the Plan Administrator's argument that the "size and nature" of the transactions set forth in the Post-Petition Extension Agreements represent something other than what would be considered ordinary.

Accordingly, FoA respectfully submits that the Court can and should exercise its discretion to find that entry into the Post-Petition Extension Agreements represents an ordinary course transaction for purposes of section 363(c) of the Bankruptcy Code.

## **CONCLUSION**

For the foregoing reasons, FoA respectfully requests that the Court (i) reverse the Memorandum Decision, (ii) hold that FoA's Administrative Claim shall be afforded administrative expense priority in the Bankruptcy Case, and (iii) grant such other and further relief in favor of FoA that the Court deems just or proper.

Dated:   March 3, 2022
         New York, New York

/s/ Robert A. Rich
Peter S. Partee, Sr.
Robert A. Rich
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
ppartee@huntonak.com
rrich2@huntonak.com

*Counsel for Appellant Finance of America Reverse LLC*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1.Based on the word counting device used in my computer program, this reply brief complies with the word limit requirement set forth in Fed. R. Bankr. P. 8015(a)(7)(B)(ii) and Local Civil Rule 7.1(c) because it contains no more than 6,500 words, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(g).

2.This brief complies with the page limitation set forth in the Court's Individual Rules of Practice, dated April 18, 2020, because it does not exceed 10 pages in length, double-spaced, which is the page limitation applicable to reply memoranda on motions.[5]

Dated:March 3, 2022
New York, New York

/s/ Robert A. Rich
Robert A. Rich

---

[5] This reply brief has been prepared using 12-point Times New Roman typestyle, rather than the 14-point typestyle set forth in Fed. R. Bankr. P. 8015(a)(5)(A), because the 10-page limit for reply memoranda of law, made applicable to bankruptcy appeal briefs per the Court's Individual Rules of Practice, allows for use of 12-point type or larger.  *See* Local Civ. R. 11.1(b)(1).