USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/23/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------- x

In re:

DITECH HOLDING CORPORATION, et al.,

Debtors,

----------------------------------------- x

FINANCE OF AMERICA LLC.,

Appellant,

-against-

21-cv-10038 (LAK)
[Chap. 11 No. 19-10412 (JLG)]

MORTGAGE WINDDOWN LLC, as plan administrator,

Appellee.

----------------------------------------- x

**MEMORANDUM OPINION**

Appearances:

Peter S. Partee, Sr.
Robert A. Rich
HUNTON ANDREWS KURTH LLP
*Attorneys for Appellant*

Ray C. Schrock, P.C.
Richard W. Slack
Sunny Singh
Natasha S. Hwangpo
WEIL, GOTSHAL & MANGES LLP
*Attorneys for Appellee*

LEWIS A. KAPLAN, *District Judge.*

Appellant Finance of America Reverse LLC ("FoA") appeals from a decision of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") holding that FoA's approximately $14 million dollar administrative priority claim against Chapter 11 debtor Reverse Mortgage Solutions, Inc. ("RMS")'s for post-petition breaches of loan subservicing agreements was legally insufficient and reclassifying it as a general unsecured claim. FoA argues that the Bankruptcy Court misapplied New York contract law to fashion a new and erroneous bankruptcy rule which, in FoA's words, provides "that all claims sounding in contract are deemed to arise at the time the contract was entered, regardless of when the breach occurred."[1] Appellant Mortgage Winddown LLC, the Chapter 11 Plan Administrator ("Plan Administrator"), rejoins that the Bankruptcy Court properly applied well-settled bankruptcy principles in denying administrative priority and that this appeal raises no new issues of law.

## *Facts*

Appellant FoA is a reverse mortgage lender that retained RMS, a mortgage servicing company, to subservice certain loans beginning in March 2011. Between March 2011 and October 2018, FoA and RMS entered into three concurrent mortgage subservicing agreements. Under each of those agreements, RMS collected and remitted mortgage payments for FoA in exchange for subservicing fees and other consideration.[2]

---

1 Dkt. 7, at 2-3.

2 The facts surrounding the underlying contractual relationships and the bankruptcy proceedings are set out more fully in the Bankruptcy Court's October 21, 2021 memorandum

The first agreement, dated March 18, 2011 (the "March 2011 Agreement"), expired by its original terms – inclusive of automatic renewals – on March 19, 2018. However, after the original term had expired but before RMS filed its Chapter 11 petition, the parties executed a series of seven successive extension agreements (the "Pre-petition Extensions"), the last of which extended the term of the March 2011 Agreement through March 31, 2019.

The second underlying subservicing agreement, dated December 12, 2017 (the "December 2017 Agreement"), had an original term of one month but afforded FoA a monthly renewal option, which FoA exercised continuously through February 2019.

Similarly, the third and final agreement, dated October 4, 2018 (the "October 2018 Agreement"), provided for a one-month term subject to FoA's monthly renewal option. FoA exercised that option through September 2019, when RMS's court-approved Chapter 11 Plan took effect.

On February 11, 2019 (the "Petition Date"), RMS and certain of its affiliates filed a voluntary Chapter 11 petition. The debtors thereafter remained in possession and control of RMS as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.[3] Subsequent to the Petition Date, FoA and RMS entered into four additional extensions to the March 2011 Agreement (the "Post-petition Extension Agreements"),[4] the last of which expired on

decision. *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 4928724, at *1-*5 (Bankr. S.D.N.Y. Oct. 21, 2021).

3 In Chapter 11 cases, the debtor automatically becomes a debtor in possession upon filing the petition and may continue operating unless and until the Court appoints a trustee. 11 U.S.C. §§ 1101, 1105, 1107.

4 Although FOA's briefing in some places uses the term "post-petition extension agreement" with reference to multiple subservicing contracts, it is clear that the only post-petition

September 30, 2019, the effective date of debtors' Chapter 11 Plan (the "Plan Effective Date"). Pursuant to that Chapter 11 Plan, RMS and its business were sold to an unaffiliated third party, which did not assume any of the subservicing agreements with FoA.

On November 11, 2019, FoA filed a proof of claim seeking administrative expense priority for $375,832.07 plus other amounts to be determined in damages allegedly resulting from RMS's breaches of subservicing agreements between the Petition Date and the Plan Effective Date. FoA later revised the claim amount to $14 million plus other amounts to be determined. The Plan Administrator filed an objection on April 17, 2020, which the Bankruptcy Court granted on October 21, 2021 after a sufficiency hearing. The Bankruptcy Court concluded that FoA failed to meet its burden of demonstrating a plausible ground for administrative expense priority under the Bankruptcy Code and thus reclassified FoA's claims as general unsecured claims. FoA filed a notice of appeal to this Court.

## *Discussion*

At a high level, this appeal presents a single question of law: in what circumstances, if any, will a post-petition breach of an executory contract give rise to administrative expense priority under Section 503(b) of the Bankruptcy Code? Broadly speaking, FoA contends that the Bankruptcy Court denied administrative priority based on two erroneous legal conclusions: that (1) FoA's claims arose pre-petition because none of the Post-petition Extensions were "new"

---

"agreements" at issue in this appeal concern the March 2011 Agreement. It is undisputed that the December 2017 Agreement expired at the conclusion of its final pre-petition extension and that FoA extended the October 2018 Agreement post-petition by exercising an option (the "post-petition extension options") rather than by agreement.

agreements as a matter of New York contract law; and (2) in FoA's words, "claims under pre-petition contracts never give rise to administrative expense priority."[5] The Plan Administrator rejoins that "more than 30 years of Second Circuit law" supports the Bankruptcy Court's result.[6]

*Legal Standard*

On appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*.[7] FoA appeals here from a Bankruptcy Court ruling on claim sufficiency which, as set out in the operative claims procedures order, employs the same legal standard applicable on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[8] Like a plaintiff in a civil action, the claimant must plead facts sufficient to "state a claim to relief that is plausible on its face."[9] Accordingly, a claim is sufficient where the "pleaded factual content [, assuming its truth,] allows the court to draw the reasonable inference" that the estate is liable for what the claimant has asserted.[10] Bankruptcy claimants asserting priority claims bear the burden

---

5 Dkt. 7, at 18.

6 Dkt. 9, at 13-17.

7 *In re AMR Corp.*, 610 B.R. 434, 444 (S.D.N.Y. 2019), *aff'd*, 834 F. App'x 660 (2d Cir. 2021).

8 *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 3481349, at *1 (Bankr. S.D.N.Y. Aug. 6, 2021).

9 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

10 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

of alleging facts that, if established, would entitle them to priority.[11]

*Executory Contracts and Administrative Priority*

This Court is not the first to observe that "in no area of bankruptcy 'has the law become more psychedelic than in the one titled 'executory contracts.''"[12] In this appeal, the psychedelic confusion arises at the intersection of two parts of the Bankruptcy Code: Section 365, which governs the classification of breach claims under rejected executory contracts, and Section 503, which governs administrative priority.

*11 U.S.C. § 365*

Section 365 permits the trustee or debtor in possession to "assume or reject any executory contract . . . of the debtor . . . at any time before confirmation of a plan."[13] Simply put, it enables the trustee or debtor in possession to maximize the value of the estate by availing itself of contracts that are profitable while abandoning those that are burdensome.[14] Although the

---

11 *See, e.g., Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 479 F.3d 167, 172 (2d Cir. 2007).

12 *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 687, 690 (Bankr. S.D.N.Y. 1992) (quoting Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts*, 74 MINN. L. REV. 227, 228 (1989)); *cf.* John A.E. Pottow, *A New Approach to Executory Contracts*, 96 TEX. L. REV. 1437, 1437-40 (2018).

13 11 U.S.C. §§ 365(a), 365(d)(2).

14 *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

Bankruptcy Code does not define the term "executory contract," the Second Circuit has stepped in to define it as a contract "on which some performance remains due to some extent on both sides."[15] The parties to this appeal agree that the underlying FoA-RMS subservicing agreements were executory contracts.

In the course of a Chapter 11 bankruptcy, the debtor's executory contracts may be assumed, rejected, or maintained in limbo pending a trustee or debtor in possession's decision to assume or reject, which generally can be made at any point prior to plan confirmation.[16] If the trustee or debtor in possession elects to assume an executory contract, that contract remains enforceable post-bankruptcy. Any executory contract not expressly assumed as of the Plan Effective Date is deemed rejected.[17]

Section 365 treats rejection as a breach by the debtor deemed to have occurred "immediately before the date of the filing of the petition."[18] Accordingly, a rejected executory contract often will yield pre-petition claims even where breach has been triggered by post-petition performance or events.[19] Through Section 502(g)(1), a "claim arising from the rejection, under

---

15 *Eastern Air Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 998-99 (2d Cir. 1996).

16 11 U.S.C. §§ 365(a), 365(d)(2).

17 *Id.* § 365(d)(2).

18 *Id.* § 365(g)(1).

19 *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 4928724, at *11 (Bankr. S.D.N.Y. Oct. 21, 2021) ("Where parties contemplate the possibility of future breach in their contracts, such breaches are treated as contingent pre-petition claims rather than post-petition claims.").

Section 365 . . . [,] of an executory contract ... shall be allowed ... the same as if such claim had arisen before the date of the filing of the petition" – *viz.*, as a general unsecured claim.[20] As the Bankruptcy Court pointed out, however, post-petition breaches of rejected executory contracts yield contingent pre-petition claims only where the risk of that future breach was within the "actual or presumed contemplation of the parties" at the time they entered the relevant contractual relationship.[21]

*11 U.S.C. § 503*

Section 503(b) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate."[22] Administrative expenses "receive highest priority in corporate bankruptcy proceedings."[23] Congress created administrative priority to incentivize entities to "do business with the debtor in possession" so as to rehabilitate the business for the benefit of all

---

20 *Id.* § 502(g)(1).

21 *In re Ditech Holding Corp.*, 2021 WL 4928724, at *11 (quoting *In re Chateaugay Corp.*, 944 F.2d 997, 1004 (2d Cir. 1991) (internal quotation marks omitted)); *see generally Ogle v. Fid. & Deposit Co. of Maryland*, 586 F.3d 143, 146 (2d Cir. 2009) ("A 'contingent' claim under the Code refers 'to obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created.'") (quoting *In re Manville Forest Prods. Corp.*, 209 F.3d 125, 128-29 (2d Cir. 2000) (internal quotation marks omitted)); *In re SNTL Corp.*, 571 F.3d 826, 838 (9th Cir. 2009) (holding that a contingent claim arises "when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under non-bankruptcy law").

22 11 U.S.C. § 503(b).

23 *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) (citing 11 U.S.C. § 507(a)(1)).

creditors,[24] as well as to "fulfill[] the equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him."[25] To qualify for administrative priority, the expense must represent "a concrete, discernible benefit" to the estate; a "speculative benefit or the mere potential for benefit is not enough[.]"[26] Thus, as the Second Circuit has summarized, "an expense is administrative only if it arises out of a transaction between the creditor and bankrupt's trustee or debtor in possession . . . and 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'"[27]

*The Bankruptcy Court Erroneously Classified FoA's Claims Under the March 2018 Agreement*

Observing that all three subservicing agreements were unassumed executory contracts deemed rejected pursuant to Section 365, the Bankruptcy Court classified all of FoA's claims as pre-petition on the grounds that (1) the RMS-FoA post-petition extensions do not qualify as "new contracts" as a matter of state law, and (2) all "[c]laims based on un-assumed prepetition

---

24 *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986).

25 *In re Drexel Burnham Lambert Grp. Inc*, 134 B.R. 482, 490 (Bankr. S.D.N.Y. 1991) (quoting *In re United Trucking Serv., Inc.*, 851 F.2d 159, 162 (6th Cir. 1988)); *see Am. Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S. A.*, 280 F.2d 119, 126 (2d Cir. 1960).

26 *In re Enron Corp.*, 279 B.R. 695, 706 (Bankr. S.D.N.Y. 2002).

27 *Trustees of the Amalgamated Ins. Fund*, 789 F.2d at 101 (internal citations omitted) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)).

contracts are contingent prepetition claims that arise upon the execution of the contract."[28] However, the Bankruptcy Court's classification approach – grounded in a never-before-cited case decided in a different judicial district in 2006 – misapprehends the dispositive inquiry, which does not turn on state law. Whether the Bankruptcy Code treats a post-petition breach of unassumed executory contract as a contingent pre-petition claim turns entirely upon whether the risk of that breach was within the "fair contemplation" of the parties at the time they entered the relevant contractual relationship.

*The "*Bush *Factors" Do Not Control*

In this case, the Bankruptcy Court and both parties have centered their respective analyses on *In re Bush Indus., Inc.* ("*Bush*"),[29] a Western District of New York case that asked whether a consultant's unilaterally executed pre-petition instrument reducing his own fees was a valid "modification" of an executory contract with the debtor. In that case, the consultant had filed an administrative claim for unpaid fees arising from alleged post-petition breaches of a pre-petition consulting agreement – an executory contract. The original agreement, executed in 1997, contained a clause authorizing unilateral modifications by any instrument "signed by the party against whom enforcement of any such amendment, supplement, or modification is sought."[30] In May 2003,

---

28 *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 4928724, at *10 (Bankr. S.D.N.Y. Oct. 21, 2021) (citing *Ogle v. Fid. & Deposit Co. of Maryland*, 586 F.3d 143, 146 (2d Cir. 2009)).

29 *Hain v. Bush Indus., Inc. (In re Bush Indus., Inc.)*, No. 05-CV-119S, 2006 WL 8455682 (W.D.N.Y. Mar. 29, 2006).

30 *Id.* at *2.

approximately ten months before the debtor filed its Chapter 11 petition, the consultant executed a "proposed agreement" that reduced his guaranteed payments. However, in the wake of the debtor's bankruptcy petition, he argued that the same instrument – which the debtor never counter-signed – was void because its substance rendered it a formally "new" contract as a matter of state law, thus placing it outside the scope of unilateral "modifications" authorized by the underlying executory contract.

The district court in *Bush* agreed with the bankruptcy court that the consultant's unilateral instrument was a valid modification as contemplated by the contract. As a result, the consultant had no right to recover at the higher rates to which he might have been entitled had he not unilaterally reduced his fees. But the *Bush* court plainly did not hold that the consultant's post-petition breach claims were categorically ineligible for administrative expense priority because the substance of the instrument rendered it a "new" contract as a matter of law. In fact, the bankruptcy court record in *Bush* indicates that the court declined to grant any administrative expenses because the consultant already had been "fully compensated in accordance with the terms of the [modified] Consulting Agreement" for the period between the petition filing date and rejection of the contract.[31]

In this case, the Bankruptcy Court summarized *Bush* as holding that "an agreement that restates contract provisions with no substantive changes, involves the same relationship among the same parties, contains clauses that state the parties' desire to amend and restate prior agreements, and merely adjusts the term of the agreement or the compensation, does not constitute

---

31 Dkt. 743, at ¶ 3, *In re Bush Indus., Inc.*, Case 1-04-12295-CLB (Bank. W.D.N.Y. filed June 14, 2005).

a new contract."[32] It then remarked that FoA and RMS's post-petition extensions were "like the agreement at issue in *Bush*" on account of three of four factors identified by the district court in that case. Specifically, the Bankruptcy Court observed that the RMS-FoA post-petition extensions at issue here "merely (i) restate the provisions of the applicable Subservicing Agreement with no substantive changes, (ii) involve the same relationship among the same parties, and (iii) state the parties' intention to extend terms of the subject Subservicing Agreements."[33] To be sure, it was not error to highlight the two cases' contextual similarities. The problem is that neither the Bankruptcy Court nor the parties have explained how any of the *Bush* analysis bears on *the Bankruptcy Code*, rather than the construction of the contract language at issue.

On appeal, the Plan Administrator asks the Court to compound the confusion by turning *Bush* into a novel substantive test. It asks this Court to break new ground by conceptualizing that decision as laying out supposedly determinative "Bush Factors" that control whether a post-petition agreement is a contract modification – rather than a new agreement – such that claims for breach during the post-petition period will be deemed to arise pre-petition when the underlying executory contract is rejected as set out in Section 365 in bankruptcies involving New York law.[34]

---

32 *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 4928724, at *9 (Bankr. S.D.N.Y. Oct. 21, 2021) (citing *In re Bush Indus., Inc.*, 2006 WL 8455682, at *5).

33 *Id.*

34 Appellee's Br. [Dkt. 9], at 9 ("In *Bush*, the District Court for the Western District of New York held, in the bankruptcy claim context, that an agreement that (1) restates contract provisions with no substantive changes; (2) involves the same relationship among the same parties; (3) contains clauses that state the parties' desire to amend and restate prior agreements; and (4) merely adjusts the term of the agreement or the compensation, does not constitute a new contract (the '**Bush Factors**').") (quoting *In re Bush Indus., Inc.*, 2006 WL 8455682, at *5).

But *Bush* plainly supplied no such test. Even if the Bankruptcy Court's view of *Bush* were correct in its view of New York contract law – which there is reason to doubt[35] – this Court declines to fashion that analysis into a novel interpretation of the Bankruptcy Code. More fundamentally, the Court observes that whether an agreement should be classified as an "executory contract" under the Bankruptcy Code is not guided by state law.[36] Likewise, it is "well-settled that the Bankruptcy Code governs *when* a claim arises."[37] Thus, the effect of that statutory designation on whether a post-petition breach claim will be deemed to arise pre-petition on a Section 365 rejection is a question of federal statutory interpretation that does not incorporate mechanically New York's

35 Even if the availability of administrative expense priority did turn on the extension instrument's formal classification under state law, *Bush* would not prove as instructive as the Bankruptcy Court or the Plan Administrator suggest. With respect to the general question of when New York contract law distinguishes a modification from a "new" agreement, *Bush* stands only for the proposition that "[t]he primary objective in contract interpretation is to give effect to the intent of the contracting parties as revealed by the language they chose to use." *In re Bush Indus., Inc.*, No. 05-CV-119S, 2006 WL 8455682, at *4 (W.D.N.Y. Mar. 29, 2006) (quoting *Sayers v. Rochester Telephone Corp.*, 7 F.3d 1091, 1094 (2d Cir. 1993)). Indeed, the key interpretive question in that case was whether the text of the unilateral modification at issue fell unambiguously within the relevant clause of the underlying executory contract, not whether the terms of subsequent agreement would, in a vacuum, be viewed as a "new contract." *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 4928724, at *9 (Bankr. S.D.N.Y. Oct. 21, 2021) (observing that the agreement in *Bush* was held to be a modification rather than a "new" contract "due to a clause [in the initial agreement] allowing modification by an instrument 'signed by the party against whom the enforcement of any such amendment, supplement or modification is sought'").

36 As the Ninth Circuit helpfully has explained, "[t]here is no need to look at state law for the meaning of 'executory contract.' As Professor Countryman observed, there was no need for a statutory definition of executory contract under the former Bankruptcy Act, because the courts 'seem to have experienced little difficulty in fashioning a definition of executory contract that is both workable and consistent with the .. polic[ies] of the .. Bankruptcy Act dealing with contracts.' Perhaps because the federal courts had fashioned a definition of executory contracts, the drafters of the new Bankruptcy Code found it unnecessary to define the term." *In re Alexander*, 670 F.2d 885, 888 (9th Cir. 1982) (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 MINN. L. REV. 479, 563 (1974)).

37 *Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 581 (S.D.N.Y. 2000).

contract principles. Perhaps it is for this reason that the Court cannot locate any decision from any tribunal that has cited *In re Bush* apart from the Bankruptcy Court decision from which FoA now appeals.

*Applying the "Fair Contemplation" Test*

Despite the misplaced inquiry into whether the Post-petition Extension Agreements are new contracts as a matter of state law formality, the Bankruptcy Court ultimately did pose the correct question for determining whether the FoA's post-petition breach claims are deemed to arise pre-petition: i.e., whether "the risk of subservicing errors in the post-petition period was within the fair contemplation of the parties" at the time they entered into the underlying subservicing agreement.[38] And it concluded, without distinguishing between the March 2011 and October 2018 subservicing agreements, that the risk of all errors and other material post-petition breaches for which FoA now claims damages was within the fair contemplation of the parties at execution, adding that "the fact that the Debtors received compensation for their services does not transform the claims into administrative expense claims."[39]

To support that holding, the Bankruptcy Court pointed to four cases, all of which are distinguishable from this one in a fundamental respect. Unlike FoA and RMS's original March 2011 Agreement, the contracts at issue in the Bankruptcy Court's cases created performance obligations

---

38 *In re Ditech Holding Corp.*, 2021 WL 4928724, at *11; *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir. 1991).

39 *In re Ditech Holding Corp.*, 2021 WL 4928724, at *11.

that extended into the relevant post-petition period by their own terms.[40] Here, by contrast, the underlying subservicing agreements – both at the time they first were executed and at the time they were extended pre-petition – did not obligate either party to do anything during the window of time for which FoA now claims damages. Contractual privity between RMS and FoA would have ended but for some future transaction to extend those obligations post-petition.

Thus, although the relevant *types* of subservicing errors that gave rise to FoA's claim may have been foreseeable at the time the parties entered into the executory contract, this does not mean that the risk of the post-petition breaches for which FoA now claims damages under the March 2011 Agreement were within the fair contemplation of the parties at the time of execution. Obviously, that FoA and RMS someday might execute future extension agreements was, in some colloquial sense, a contemplable contingency. But it is equally obvious that not every foreseeable potentiality is a contingent "legal obligation" as contemplated in the Bankruptcy Code's conception of the "claim."[41]

To hold as a matter of law that a post-petition contract extension of identical substantive terms never can result in an administrative-priority breach of contract claim would flip the Bankruptcy Code on its head. As both parties observe in their papers, a universally acknowledged aim of administrative expense priority is to provide counterparties with an incentive

---

40 *See Id.* at *10 (citing *Rescap Liquidating Tr. v. PHH Mortg. Corp. (In re Residential Cap., LLC)*, 558 B.R. 77 (S.D.N.Y. 2016); *Conway Hosp., Inc. v. Lehman Bros. Holdings Inc.*, 531 B.R. 339 (S.D.N.Y. 2015); *In re Bradlees Stores, Inc.*, No. 02-cv-0896 (WHO), 2003 WL 76990 (S.D.N.Y. Jan. 9, 2003), *aff'd*, 78 F. App'x 166 (2d Cir. 2003); and *Pearl-Phil GMT (Far E.) Ltd. v. Calder Corp.*, 266 B.R. 575 (S.D.N.Y. 2001)).

41 The Bankruptcy Code's conception of the "claim" includes "all *legal obligations* of the debtor, no matter how remote or contingent." *In re Chateaugay Corp.*, 944 F.2d at 1003 (emphasis added); *see* 11 U.S.C. § 101(5).

to do business with the debtor in possession so as to rehabilitate the business for the collective benefit of all creditors.[42] The Bankruptcy Court's result obviously would disincentivize counterparties who have rendered services to the going concern pre-petition from performing those exact same services on similar terms post-petition. It foreseeably would require debtors in possession to devote time and resources to seeking out new counterparties – whose compensation would be protected by administrative priority – even where the firms having preexisting business relationships with the going concern readily would provide the same services on more favorable terms and with fewer transaction costs. The Bankruptcy Court's interpretation of Section 503(b), if adopted, would introduce inefficiencies harmful to all parties in a Chapter 11 case.

Perhaps more troubling, the Bankruptcy Court's interpretation of the statute would invite unjust enrichment of the bankruptcy estate. To hold that pre-petition agreements, the plain terms of which do not obligate post-petition performance, necessarily give rise only to unsecured claims for post-petition breaches of post-petition extensions because extension agreements are foreseeable at execution would pave the way for debtors in possession to demand and receive the benefit of services for which they have no intention ever of paying fair value. Section 503(b) cannot be read to put counterparties who have been induced to undertake new obligations that preserve the estate for the benefit of all creditors on the same footing as those who have done nothing to assist in the post-petition operation of the business, as it is well-established that the Bankruptcy Code's

42 *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) ("Congress reasoned that unless the debts incurred by the debtor in possession could be given priority over the debts which forced the estate into bankruptcy in the first place, persons would not do business with the debtor in possession, which would inhibit rehabilitation of the business and thus harm the creditors.").

"focus on allowance of a priority is to prevent unjust enrichment of the estate."[43]

In sum, because all of the performance obligations enshrined in the March 2011 Agreement would have ended as of April 1, 2021 but for the parties' mutual assent to the Post-petition Extension Agreements, the Court concludes that the risk of subservicing errors beyond that date was not within the fair contemplation of the parties at the time they entered into the underlying contract.[44] FoA's claims against RMS for breaches of the March 2011 Agreement occurring between April 1, 2021 and the Plan Effective Date arise post-petition and are eligible for administrative expense priority to whatever extent the Bankruptcy Court determines that they comprise "actual, necessary costs and expenses" of preserving the estate.

*"Fair Contemplation" Does Not Conclude the Inquiry as to the December 2017 and October 2018 Agreements*

Unlike with the March 2011 Agreement, FoA effected post-petition extensions of the October 2018 Agreement unilaterally by option. At the outset, the Court agrees with the Plan Administrator and the Bankruptcy Court that FoA's breach claims under the October 2018 Agreement, through Section 365, are deemed to arise pre-petition. It plainly was foreseeable that FoA could obligate RMS under the October 2018 Agreement into and through the relevant post-petition period without any supplemental agreement or action by the other party. Presumably, FoA

---

43

*In re Enron Corp.*, 279 B.R. 79, 85 (Bankr. S.D.N.Y. 2002)

44

By extension, the Bankruptcy Court was correct to suggest that an "*automatically* renewed service agreement" would not result in a post-petition breach claim under an executory contract. *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 4928724, at *9 (Bankr. S.D.N.Y. Oct. 21, 2021) (citing *In re Country Club Ests. at Aventura Maint. Ass'n, Inc.*, 227 B.R. 565, 567-68 (Bankr. S.D. Fla. 1998)) (emphasis added).

gave consideration to hold such an option.

The Bankruptcy Court stopped here, holding that "under Second Circuit case law, the claims are prepetition claims, which are not afforded administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code."[45] However, as to the December 2017 and October 2018 Agreements, that statement is only correct to the limited extent that it suggests FoA's *breach of contract* claims under those two agreements are not eligible for administrative priority. Nevertheless, terminating the inquiry here ignores a clear line of precedent holding that administrative priority separately is "available. . .if the estate received demonstrable benefits under the contract" post-petition -- in other words, on what essentially is a quasi-contract theory[46]

The Circuit itself has indicated that claims associated with pre-petition executory contracts may be eligible for administrative priority if the debtor in possession has not rejected the executory contract but elects to receive the benefits of the claimant's goods or services post-petition. For example, in *In re Klein Sleep Products, Inc.*, the Circuit explained that "administrative priority [is] available *either* if the trustee assumed an executory contract or if the estate received demonstrable benefits under the contract."[47] Likewise, courts in this district reliably have recognized that even where an existing pre-petition contract obligates the parties through the post-petition, pre-confirmation period, a claimant may be entitled to administrative expenses where the

---

45 *Id.* at *11.

46 *Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 27 (2d Cir. 1996); *see Zelin v. Unishops, Inc. (In re Unishops, Inc.)*, 553 F.2d 305, 308 (2d Cir. 1977) ("It is settled law that a claim arising under an executory contract is entitled to priority if the trustee or debtor in possession elects to assume the contract *or* if he receives benefits under it.") (citations and internal quotation marks omitted) (emphasis added).

47 *In re Klein Sleep Prods., Inc.*, 78 F.3d at 27.

debtor in possession continues to accept and receive the benefit of the counterparty's performance.[48] Illustrative of this point are bankruptcy court decisions noting how a post-petition breach of an executory contract can yield more than one type of claim.[49] And as FoA notes in its briefing, it is for this very reason that debtors in possession often seek expedited or *nunc pro tunc* rejection of executory contracts that portend large administrative expense claims against the estate.[50]

In a footnote, the Bankruptcy Court dismissed the relevance of *In re Klein Sleep Products* and related authority holding that administrative expense priority may be available when the estate has received demonstrable benefits of performance post-petition on the ground that "all of th[ose cases] pre-date the Second Circuit's clear direction that claims based upon un-assumed

---

48 *See, e.g., In re AppliedTheory Corp.*, 312 B.R. 225, 237 (Bankr. S.D.N.Y. 2004) ("[A]lthough any claim arising from the debtor's rejection of an executory contract is treated as arising pre-petition and giving rise to a pre-petition claim, the nondebtor party may nonetheless be entitled to administrative priority for any uncompensated-for benefits received by the debtor prior to rejection."); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 (1984) (holding that debtor in possession is obligated to pay for the reasonable value of services when it continues to receive benefits from counterparty to an executory contract and that the contract terms are presumed to represent reasonable value).

49 *See, e.g., In re Pre-Press Graphics Co., Inc.*, 300 B.R. 902, 909 (Bankr. N.D. Ill. 2003) ("Rejection of an underlying contract constitutes a breach of the contract, which usually results in a three-prong claim against the estate: (1) a general unsecured claim for any accrued unpaid rent due under the lease or contract prior to the bankruptcy filing . . . [;] an administrative (and therefore a priority) claim for rent amounting to either rent that accrued post-petition but prior to rejection or the reasonable value of services or goods for that same time whichever the court finds appropriate under § 503(b)(1)(A) and § 507(a)(1); and (3) a general unsecured claim for 'rejection damages' (amounts due under the remaining term of the lease or contract) under § 502, subject to certain limitations on the maximum amount a claimant may claim as rejection damages under § 502(b)(6)(A) and § 502(b)(7)(A). *See* 1 T. SALERNO, C. HANSEN AND G.C. MEYER, ADVANCED CHAPTER 11 BANKRUPTCY PRACTICE § 7.74 (2d ed.1996 and 2002 Cum. Supp) (collecting cases).").

50 *See* Dkt 7, at 17 & n.18 (collecting cases).

pre-petition contracts are contingent pre-petition claims that arise upon execution of the contract."[51] Yet neither that footnote nor its accompanying text identifies specifically any Second Circuit authority that abrogated that proposition. The Bankruptcy Court's decision as a whole cites only one Second Circuit case subsequent to FoA's aforementioned line of cases: *Ogle v. Fidelity & Deposit Co. of Maryland*.[52] *Ogle*, which says nothing about Section 503(b), holds only that "the Bankruptcy Code does not bar an unsecured claim for post-petition attorneys' fees authorized by a prepetition contract valid under state law" and, further, that such claims for fees incurred while litigating an underlying pre-petition contract are deemed to have arisen pre-petition.[53] The Circuit was not asked to decide anything about the parties' underlying performance obligations, much less whether they arose from a post-petition transaction.

Here, FoA's position is that all claims predicated on a post-petition breach of an executory contract are eligible for administrative expense priority so long as "the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume."[54] The Plan Administrator rejoins that administrative expense priority is unavailable in any scenario where parties contemplate the possibility of future breach, regardless of whether the debtor-in-possession continues to receive the benefits of performance. Neither is entirely correct.

---

51 *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 4928724, at *11 n.21 (Bankr. S.D.N.Y. Oct. 21, 2021).

52 586 F.3d 143 (2d Cir. 2009).

53 *Id.* at 146.

54 Dkt. 7, at 14 (citing *NLRB. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984)).

As discussed above, Section 503 operationalized the "equitable principle" of "preventing unjust enrichment of the debtor's estate." It therefore makes sense that the statute's plain text does not limit administrative priority status to breach of contract claims or, unlike Section 365, presuppose the existence of an executory contract. Rather, Section 503(b) – as interpreted by the Circuit – establishes a boundary line between "expenses" arising from "transaction[s] between the creditor and . . . debtor in possession" or the trustee and those arising from transactions between the creditor and debtor. Accordingly, the threshold question in this case is simply whether the claims arise from a "transaction" and, if so, whether it was attributable to parties covered by the statute. Without a doubt, Section 503's equitable fount would be well acquainted with the notion of liabilities arising from transactions outside or adjacent to a contract, especially where one party has created an expectation inducing another to give new value.[55]

Available interpretive guidance breaks in multiple directions. As a general rule, the Bankruptcy Code's priority statutes are construed narrowly because they "cut against the general goal in bankruptcy law to distribute limited debtor assets equally among similarly situated creditors[.]"[56] At the same time, Congress added Section 503 to "fulfill[] the equitable principle of preventing unjust enrichment of the debtor's estate," a purpose that by its very nature relies on broad and flexible remedies committed to judicial discretion.[57] Nevertheless, the Circuit, in the

---

55 *See* E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS, § 2.20 at 185-98 (3d ed. 2004).

56 *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 54 (Bankr. S.D.N.Y. 2004).

57 *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("[T]he scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *see Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 640 n.1812 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016); *see also In re Kollel Mateh Efraim, LLC*, No. 04-16410 SMB, 2010 WL 3782050, at *7 (Bankr. S.D.N.Y. Sept. 21,

administrative expenses context, has accepted the general proposition that "[b]ecause there are limited resources in a bankruptcy case, 'statutory priorities are narrowly construed.'"[58]

At face value, there can be little doubt that a single party's unilateral action is not a "transaction," since that term quite obviously denotes something moving or exchanging between or among entities. Perhaps for that reason, many bankruptcy courts view the essential question to be whether the creditor was "induced" to provide a post-petition benefit to the estate it otherwise would not have provided,[59] which suggests that recovery of administrative expenses under the Bankruptcy Code indeed is narrower than some of the quasi-contract restitution remedies traditionally available at equity.[60] This Court agrees that inducement – more than simply receipt of

2010), *aff'd*, 456 B.R. 185 (S.D.N.Y. 2011) ("The bankruptcy courts have broad discretion in determining whether to award administrative expense priority. That discretion is limited by the clear intent of section 503(b)(1)(A): the actual and necessary costs of preserving the estate") (quoting *In re Woodstock Assocs. I, Inc.*, 120 B.R. 436, 451 (Bankr. N.D. Ill. 1990)).

58

*In re Lyondell Chem. Co.*, 542 F. App'x 41, 42-43 (2d Cir. 2013) (quoting *Trs. of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir.1986)).

59

*See, e.g.*, *In re Old Carco LLC*, 424 B.R. 633, 642 (Bankr.S.D.N.Y. 2010) ("The services performed by the claimant must have been 'induced' by the debtor-in-possession, not the pre-petition debtor. Considering inducement by the debtor-in-possession to be a crucial element comports with the policy reason for allowing the priority, which is to encourage third parties to supply the debtor-in-possession with goods and services with the goal of achieving a reorganization to benefit all creditors. Thus, benefit to the debtor-in-possession alone, without its having induced the performance, is not sufficient to warrant entitlement to an administrative claim priority, as it would contradict this policy reason for allowing the priority."); *see also In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984); *In re Chateaugay Corp.*, 156 B.R. 391, 399 (S.D.N.Y.), *aff'd*, 10 F.3d 944 (2d Cir. 1993); *In re BH S & B Holdings LLC*, 426 B.R. 478, 486 (Bankr. S.D.N.Y. 2010); *In re Globe Metallurgical, Inc.*, 312 B.R. 34, 41 (Bankr. S.D.N.Y. 2004).

60

*See* E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS, § 2.20 at 185-98 (3d ed. 2004). In New York, for example, an action sounding in *quantum meruit* does not require the claimant to show affirmative "inducement," but rather "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Lebetkin v. Giray*, No. 20-1374, 2021 WL 2965323, at *3 (2d Cir. July 14, 2021) (quoting

benefits – is required under the statute. In any event, it is appropriate for the Bankruptcy Court to determine in the first instance whether FoA has any administrative expense claims on a "demonstrable benefits" theory.[61]

*FoA's Eligibility for Administrative Priority Would Not Result in A Windfall*

Contrary to the Plan Administrator's suggestion, the Court's result here obviously will not "permit [FoA] to leapfrog other prepetition claimants and collect one-hundred percent (100%) of its prepetition claims against the Debtor."[62] A debt is "not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate."[63] The Supreme Court itself has noted that if the debtor-in-possession "elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract," the debtor-in-possession is obligated to pay *"the reasonable value of those services*[.]*"*[64]

---

*Lebetkin v. Giray*, No. 20-1374, 2021 WL 2965323, at *3 (2d Cir. July 14, 2021) (quoting *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)).

61

*Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 27 (2d Cir. 1996). This foreseeably could include claims under the December 2017 Agreement to the extent that it remained in effect past February 11, 2021 pursuant to the final pre-petition extension. *See also In re Fairfield Sentry Ltd.*, No. 10-cv-7340 (LAP), 2010 WL 4910119, at *2 (S.D.N.Y. Nov. 22, 2010) ("[T]he bankruptcy court is familiar with these proceedings and the underlying factual context, and, moreover, it can employ its specialty expertise to this question. Thus, judicial efficiency would be served and the uniform administration of the bankruptcy laws improved by allowing the bankruptcy judge to decide this issue in the first instance.").

62

Dkt. 9, at 3.

63

*Trs. of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986).

64

*N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (emphasis added).

Whether FoA has overstated the extent to which its claims represent "the actual and necessary costs of preserving the estate" is a question entirely separate from those the Court has addressed above.

### *Conclusion*

For the foregoing reasons, the Bankruptcy Court's decision on claim sufficiency is VACATED. The case is remanded to the Bankruptcy Court for further proceedings consistent with this Memorandum Opinion.

SO ORDERED.

Dated: September 22, 2022

Lewis A. Kaplan
United States District Judge